UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JASON CORONA, | : | CIVIL ACTION NO. |
| Plaintiff, | : | |
| v. | : | **JURY TRIAL DEMANDED** |
| ALLIED UNIVERSAL SECURITY SERVICES and ALLIED UNIVERSAL SECURITY SERVICES, LLC | : | |
| | : | JANUARY 27, 2021 |
| Defendant. | : | |

## COMPLAINT

### JURISDICTION AND VENUE

1. This action arises under the Americans with Disabilities Act Amendments Act of 2008 (ADAAA), codified as amended at 42 U.S.C. § 12101 et seq.

2. The jurisdiction of this court is founded upon 28 U.S.C. §1331 (federal question) and the provisions of 28 U.S.C. §1343.

3. Venue is proper in the District of Connecticut pursuant to 28 U.S.C. §1391(b) in that the claims arose in this district and Plaintiff resides in this district.

4. Supplemental jurisdiction over Plaintiff's supplemental state law claims are invoked pursuant to 28 U.S.C. §1367 as the claims arise out of the same transaction and occurrences as Plaintiff's federal claims.

5. Costs, expert witness fees and attorney's fees are sought pursuant to 42 U.S.C. §1988.

6. Plaintiff received a Notice of Right to Sue from the Equal Employment Opportunity Commission (EEOC) on October 29, 2020, and timely files this claim.

## PLAINTIFF

7. The Plaintiff, Jason Corona ("Corona" or "Plaintiff") is a natural person and resident of the State of Connecticut.

## DEFENDANTS

8. The Defendant, Allied Universal Security Services is a foreign corporation, headquartered in Pennsylvania, and conducts business within the State of Connecticut at 1000 Bridgeport Avenue, Suite 205, Shelton, CT 06484, where Plaintiff was employed.

9. The Defendant, Allied Universal Security Services, LLC is a Connecticut limited liability company, organized under the laws of the State of Connecticut, is registered to conduct business in the State of Connecticut, and conducts substantial business at 1000 Bridgeport Avenue, Suite 205, Shelton, CT 06484, where Plaintiff was employed.

10. Allied Universal Security Services owns and/or operates and/or is affiliated with Allied Universal Security Services, LLC (collectively referred to as "Allied" or "Defendants")

## FACTUAL ALLEGATIONS

**A. Corona's Disability Background**

11. In January 2017, prior to being hired by Allied, Corona was involved in a serious automobile accident that caused him physical and phycological damage causing him severe Post Traumatic Stress Disorder (PTSD) and depression.

12. Consequently, Corona was required to constantly medicate to ease the pain and treatment for his PTSD condition.

13. Finally, in July 2017, after intense psychiatric treatment, Corona was cleared by his doctor to return to work, with doctor restrictions; namely, he was advised not to engage in any physically demanding activities and could not drive to long distances that could aggravate his PTSD.

14. Corona's condition, according to Doctor Rogowski, Ph.D, creates anxiety in Corona that "can become so severe that he not only unable to drive, but it would be dangerous for him to drive in that state of mind.  This condition restricts his geographic mobility &, limits the availability of his employment opportunities to the short commuting distance that he can tolerate."

**B.** **Allied Hires Corona; Corona Makes His Disability Immediately Known**

15. In August 2017, Allied hired Corona to fulfill the position of Security Professional.

16. On Corona's job application, and during the interview process, he was clear about his ADAAA covered disability and explicitly informed Josiane Parnell ("Parnell") (no known disability) the Human Resources Coordinator, about the restrictions related to his condition.

17. Since PTSD was listed on the job application, Corona checked the box stating he had a disability.

18. Corona also specifically mentioned the hazard that long driving commutes represent to his disability potentially exacerbating his PTSD and the medical need for him to be assigned locally.

19. Parnell seemed understanding of Corona's disability and had no objection.

20. Corona was then assigned as a Security Professional, locally at Teavana in Stratford Connecticut.

21. There, Corona performed the duties of his position in a satisfactory manner, receiving no write-ups, no poor performance reviews, and no disciplinary reprimands.

22. Unfortunately, in March 2018, Teavana closed many of its operations nationwide and consolidated those operations into Starbucks facilities.

23. This meant that Corona had to be placed at another local location, in accordance with his doctor's strict medical driving restrictions.

24. In or about March 2018, Corona began proactively communicating with Jean Luc ("Luc") (no known disability) Operations Manager, about being positioned by Allied at another local company.

25. However, Corona was denied an accommodation to continue working in a full-time position, that met his disability needs.

26. Corona's particular PTSD, directly related to his driving, prevents him from commuting long distances, and the company refused to accommodate his reasonable and medically necessary accommodation of being in close proximity to his Shelton residence.

27. Nonetheless, remaining loyal to the company, and still, with the hope of being accommodated at a location where he could medically commute, Corona began temporarily filling in while other security professionals were on vacation.

28. During this time, Corona was able to cover some shifts in Shelton, approximately five minutes away from his residence.

29. Given the gravity of his disability, and knowing that he could not medically commute longer distances, Allied still only offered Corona positions in Stamford and close to Hartford, in complete disregard for his disability-related restrictions.

30. Needless to say, these locations were too distant for Corona to travel, considering his disability, severely limiting his driving distance, medically, to <u>only local positions</u>.

31. Again, Corona reminded Allied management of his PTSD, and specifically, that his disability related to driving and made it impossible for him to commute to the aforementioned distant locations being proposed by the Defendants.

32. In or about, April or May 2018, Corona was assigned to the United Health Group contract.

33. Then, unfortunately, on March 4, 2019, he received a notification informing him that the last date of service for UHG was April 15, 2019.

34. Shortly after receiving the notification about the termination of the UHG contract, Corona officially notified Luc of his decision to remain at Allied.

35. However, similar to before, Corona was never offered any of the seemingly available positions that would reasonably accommodate his serious health condition.

36. Consequentially, Corona's last day of duty was April 14, 2019, because Allied—fully aware of his medically necessary driving limitations— continued to exclusively offer him positions at locations that violated his known medical driving restrictions because the locations were too distant for him to safely drive to.

37. Allied terminated Corona's employment on May 13, 2019, without ever engaging in the interactive process or accommodating his known disability and for exhibiting

symptoms causally related to his disability; essentially, his inability to drive to a distant location.

38. Corona advised William "Bill" Cable and Josie of his medically necessary accommodations; unfortunately, to his severe detriment, neither ever offered an accommodation nor engaged in the ADAAA required "interactive process." As the result, Corona was wrongfully terminated.

## COUNT ONE

### VIOLATION OF THE ADAAA - DISABILITY DISCRIMINATION AGAINST ALL DEFENDANTS

39. Plaintiff hereby incorporates Paragraphs 1-38, with the same force and impact as if fully set forth herein.

40. Plaintiff suffers from PTSD.

41. Plaintiff's PTSD limited him to short commuting distances which was known to Allied.

42. Allied treated Corona in a disparate manner in the terms and conditions of his employment based upon his disability, including, but not limited to the following:

    a) Disregarding his medical driving restrictions; and

    b) On May 13, 2019, terminating his employment.

43. Corona was terminated from Allied for conduct caused by his known disability.

44. As a result of his wrongful discharge, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety, and loss of the ability to enjoy life's pleasures and activities.

45. Plaintiff seeks compensatory and punitive damages for Defendant's misconduct.

## COUNT TWO

### VIOLATION OF THE ADAAA - DISABILITY DISCRIMINATION, FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS AND FAILURE TO ACCOMMODATE
### AGAINST ALL DEFENDANTS

46. Plaintiff incorporates paragraphs 1-38, with the same force and impact as if fully set forth herein at length.

47. Plaintiff's PTSD limited him to short commuting distances which was known to Allied.

48. Allied failed to accommodate the Plaintiff's known disability, by, among other things:

    (a) Failing to engage in the interactive process, despite knowing or reasonably should have known of Plaintiff's disability;

    (b) Failing to accommodate Plaintiff's disability after becoming aware of his disability; and

    (c) Terminating Plaintiff's employment on May 13, 2019.

49. As a result of his wrongful discharge, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety, and loss of the ability to enjoy life's pleasures and activities.

50. Plaintiff seeks compensatory and punitive damages for Defendants' misconduct.

## COUNT THREE

### RETALIATION,
### IN VIOLATION OF THE ADAAA
### AGAINST ALL DEFENDANTS

51. Plaintiff incorporates paragraphs 1-38, with the same force and impact as if fully set forth herein at length.

52. Among other factors that motivated Allied's termination of Corona was retaliation due to his complaints that he could not travel to distant locations.

53. As a result of his wrongful discharge, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety, and loss of the ability to enjoy life's pleasures and activities.

54. Plaintiff seeks compensatory and punitive damages for Defendants' misconduct.

## PRAYER FOR RELIEF

Wherefore the Plaintiff prays that this court award:

1. Money damages;

2. Costs;

3. Punitive damages, attorney fees, and expert witness fees;

4. Pre-judgment interest

5. Trial by jury; and

6. Such other relief as the Court deems just, fair, and equitable.

THE PLAINTIFF,
JASON CORONA

By: _____/s/_____
    Michael C. McMinn (#*ct27169*)
    **THE MCMINN EMPLOYMENT LAW FIRM, LLC**
    1000 Lafayette Blvd., Suite 1100
    Bridgeport, CT 06604
    Tel: (203) 683-6007
    Fax: (203) 680-9881
    michael@mcminnemploymentlaw.com

*COUNSEL FOR PLAINTIFF*